**TAGGED OPINION**



**ORDERED in the Southern District of Florida on March 09, 2007.**

_____
A. Jay Cristol, Judge
United States Bankruptcy Court

_____

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                    CASE NO. 06-14878-BKC-AJC
                                          CHAPTER 13
ENRIQUE ANTONIO OCON,

     Debtor.

_____/

ENRIQUE ANTONIO OCON,                     ADV. PROC. NO. 06-2140-BKC-AJC-A

     Plaintiff,

vs.

EQUINAMICS, CORP. and
JANINE OCON,

     Defendants.

_____/

### ORDER GRANTING EQUINAMICS, CORP.'S
### MOTION FOR SANCTIONS FOR FRAUD ON THE COURT

    **THIS CAUSE** having come before the Court on February 13, 2007, at 10:00 a.m.,

upon _Defendant, Equinamics, Corp.'s Motion for Sanctions For Fraud on the Court_ (the

"Motion") **(D.E. #17)**. The Court has reviewed the Motion, has reviewed the

*Debtor/Plaintiff's Memorandum of Law in Opposition to Defendant, Equinamics, Corp.'s Motion for Sanctions For Fraud on the Court* (the "Response") **(D.E. #36)**, and has heard argument of counsel.

In its Motion Equinamics has requested that this Court enter on order of dismissal with prejudice of Plaintiff's adversary complaint, and an award of attorney's fees and costs against Plaintiff and/or his counsel based upon a) misrepresentations made by Sherri B. Simpson, Esq. ("Simpson") at a hearing before the Court on January 30, 2007, and b) the conduct of Simpson and her co-counsel, James A. Bonfiglio, Esq. ("Bonfiglio") following the January 30, 2007 hearing, where, rather than correcting such misrepresentations, they proceeded to put Equinamics to the burden and expense, and the Court to the waste of time, of conducting an evidentiary hearing on January 31, 2007 to put the lie to the representations they of necessity knew by then were false.

On January 30, 2007 the Court convened a hearing on Equinamics' Motion to Dismiss **(Main Case D.E. #49)**, for Stay Relief **(Main Case D.E. #22)**, for Abstention **(Main Case D.E. #23)**, and Objections to Exemptions **(Main Case D.E. #43)**. During the January 30th hearing, the Court asked counsel for the parties a series of questions so it could better understand the transaction which Plaintiff had characterized as a predatory loan and Equinamics had characterized as a sale to Equinamics followed by a lease back to the Plaintiff. In response to the Court's questions, Equinamics' counsel advised that Equinamics had made substantial payments for the purchase of the property. Plaintiff's

counsel, however, informed the Court that the payments Equinamics claimed to have made to Plaintiff were not in fact made.

The Court expressed its concern that conflicting representations were being made about such basic facts, specifically, a representation by Equinamics that it had made payments of $5,000 and $2,800 to Plaintiff; and a representation by Plaintiff, through Simpson, that neither of those payments were made.  Accordingly, the Court scheduled an evidentiary hearing for January 31, 2007 to determine that sole issue, with the Court specifically warning the parties: "I want to know who is telling me the truth and who is lying."

On January 31, 2007 the evidentiary hearing commenced as ordered by the Court. The hearing was scheduled for 30 minutes but went approximately 10 minutes beyond the scheduled time.  Equinamics commenced the hearing by calling Plaintiff as an adverse witness, and, upon being shown Hearing Exhibit No. 1 from Equinamics' Exhibit Register **(Main Case D.E. #59)**, he admitted receiving $5,000 as an advance on the $19,000 final balance of consideration paid.  Plaintiff was next shown Hearing Exhibit No. 2 from Equinamics' Exhibit Register, and was asked whether he received the $2,800 payment which his counsel had likewise claimed the day before had not been received.  Plaintiff's testimony was that he did not remember one way or the other.  The balance of the hearing consisted of Mr. Juan Lievano testifying on behalf of Equinamics and authenticating documents, including banking records, to demonstrate that Plaintiff had received the $5,000 and $2,800 payments.  Plaintiff's counsel made many objections on direct examination and engaged in protracted cross-examination.

3

Simpson's representations to the Court on January 30, 2007  that the $5,000 check and the $2,800 check had not been received by Plaintiff, were both proven by clear and convincing evidence on January 31, 2007 to have been false.

In defense of the Motion, the Response essentially blames the Court for what took place.  Simpson describes the Court's focus on whether Equinamics paid for the property it said it bought as "misplaced" and that "the record shows that Ocon's counsel allowed the Court and Equinamics to lead her away from the true matters at hand, and allowed the Court to push her into answering a question after she clearly stated she did not know the answer, which the Court should not have pushed her on...."  Simpson's claim in her Response, that she informed the Court on January 30th that she did not know the answer to its question, is false.  Not only does the record of the hearing demonstrate that Simpson affirmatively made the untrue statements, but, at the February 13th Hearing, even her own counsel admitted that Simpson should have told the Court she did not know the answer to its question, rather than answering with information that was not true.[1]

The Response also argues that because the truth was uncovered at the January 31st hearing, the Court had not been deceived, and suggests that a litigant or his attorney can lie to the Court with impunity so long as the lie is not believed.  The Response cites

---

[1] Mr. Levin stated:

And granted, Your Honor, it probably would have been better for perhaps more experienced counsel to say, 'Judge I don't know.  You can beat me, smack me, hit me, I don't know.  Let me check with my client and report back to you.  I don't have the information you want.' That wasn't done by Ms. Simpson.

4

inapplicable case law to support this argument: cases addressing whether relief from the operation of a final judgment may be had under Fed. Rule Civ. Pro. 60(b) (where such causal relationship issues are of course important in determining whether the finality of a judgment should be disturbed).[2]  But the Response provides no authority to support the proposition made by Plaintiff and his attorneys that punishment is unavailable when the Court catches an offender in bad faith or frivolous conduct in the midst of a proceeding. Rather than expressing any remorse, Simpson went so far as to request sanctions against Equinamics in her Response, to compensate her for the fees she incurred in retaining separate counsel to represent her and for the "considerable amount of time" she states she spent defending the Motion.

The Court notes that the Response states that it was filed by Simpson on her own behalf and on behalf of Plaintiff, and does not indicate it was filed on behalf of Bonfiglio. The Court also notes that the only argument presented to it in opposition to the Motion at the February 13, 2007 hearing (the "Hearing") was presented on behalf of Simpson by her counsel, Michael Levin, Esq.; no argument in opposition was offered by or on behalf of Bonfiglio.  During the Hearing, Mr. Levin argued that because of her inexperience, Simpson should not be subject to sanctions.   But, even though the Motion did not single out Simpson as being solely responsible for the misconduct justifying sanctions, for reasons

---

[2] *See, e.g. Computer Leaseco, Inc. V. NTP, Inc.*194 Fed. Appx. 328 (6th Cir. 2006);and *Great Coastal Express v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, & Helpers of America,*86 F.R.D 131 (E.D. Va. 1980).

not explained to the Court, Bonfiglio's conduct was simply not defended in the Response nor in the Hearing.    While Bonfiglio was not the attorney making the initial misrepresentation to the Court during the January 30, 2007 hearing, he was the attorney who, at the evidentiary hearing on January 31, 2007, actively promoted and defended the initial misrepresentation.    And, it is the failure to promptly correct the initial misrepresentations, and the waste of time caused by Bonfiglio and Simpson forcing Equinamics to prove up the falsity of these misrepresentations on January 31, that the Court finds particularly galling.

Within this context the Court notes that the defense of inexperience, assuming for the sake of argument it is even relevant, is contradicted by the records of the Florida Bar which reveal that Simpson was admitted to the Florida Bar on November 22, 1990 (over 16 years of practice)  and Bonfiglio on December 13, 1979 (over 27 years of practice) for a combined 43 years plus of experience.   And their history as lawyers, assuming, once again for the sake of argument that the issue of their experience is relevant, suggests they should not be naive about their duty to refrain from vexatious and frivolous conduct[3] or as to their need for full and proper client consultation regarding factual matters.[4]

---

[3] In 1995 Bonfiglio was publicly reprimanded in *The Florida Bar v. James A. Bonfiglio*, Supreme Court Case No. 84,201 (attached as Exhibit "A") for misconduct involved in filing a meritless TILA lawsuit, pursuing a personal agenda through frivolous litigation, prosecuting a frivolous appeal of a summary judgment, and by his actions adding to the public perception that "neither lawyers nor the [legal] system are worthy of trust and confidence."

[4] In 2002 Simpson was admonished in in *The Florida Bar v. Sherri B. Simpson,* Florida Bar Case Nos. 2001-50,395(17H) and 2001-50,529 (17H) (attached as Exhibit "B") for misconduct involved not fully and properly counseling clients with regard to creditor relief and filing pleadings "without consulting fully and determining if they had a valid basis for asserting denials."

Plaintiff's counsel had an obligation to make reasonable inquiry as to the essential facts of the dispute.  Either they failed to do so and made representations to the Court without a good-faith foundation for doing so, or else Plaintiff lied to them, and they, as Plaintiff's agents, repeated those lies to the Court.  Either alternative is unacceptable as far as our system of justice is concerned.  What makes these facts even more troublesome is that, rather than simply telling Equinamics and the Court prior to the commencement of the January 31, 2007 hearing that the representations made on January 30, 2007 were inaccurate, Plaintiff's counsel required Equinamics to present evidence to prove the falsity of representations Simpson and Bonfiglio of necessity knew by then were false.[5]

Mr. Levin argued at the Hearing that Equinamics had somehow sand-bagged Ms. Simpson by not providing her copies of evidence of the payment in advance of the evidentiary hearing.  However, Plaintiff admitted, *upon being shown a copy of the contract attached to the pleadings on file,*[6] that one of the payments had been made, and that he had no memory regarding the other one not being made.

An attorney's "loyalty to the Court, as an officer thereof, demands integrity and honest dealing with the Court. And when he departs from that standard in the conduct of

---

[5]  The record of the January 30, 2007 hearing reflects that Simpson was provided a recess during which she contacted her client to make arrangements for his attendance to testify the following day on his lack of receipt of the relevant payments.

[6]  Hearing Exhibit No. 1 (the "Addendum to Agreement"), which is the document that when shown to Mr. Ocon caused him to admit to receiving the $5,000.00 payment, was attached to Mr. Ocon's Adversary Complaint as part of Composite Exhibit "A" **(D.E. #1)** and attached as Exhibit "B" to the *Amended Motion to Dismiss* **(Main Case D.E. #49)**). The claim that using exhibits attached to pleadings to disprove a misrepresentation by opposing counsel constitutes sandbagging, is, to be charitable, ill-advised.

a case he perpetrates a fraud upon the Court." *Kupferman v. Consolidated Research &*
*Manufacturing Corp.,* 459 F.2d 1072, 1078 (2d Cir.1972) [citing 7 Moore, Federal Practice,
Par. 60.33 at 513]. Fraud on the court is a "species of fraud which does or attempts to,
subvert the integrity of the court itself...." 7 Moore's Federal Practice ¶ 60.33 at 515 (1971
ed.) See *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir.1972).   An
attorney may commit fraud on the court not only through misrepresentation, but also
through omission. See *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 246,
64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944)("It is a wrong ... which ... cannot complacently
be tolerated consistently with the good order of society....involv[ing] two victims: the
individual litigant ... and the court itself, whose integrity is compromised by the fraudulent
behavior of its officers.)  "The very temple of justice [is] defiled." *Universal Oil Products v.*
*Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946).

Here, the conduct on display before this Court "fails to comport with the standards
of integrity required by the judicial system [and] [s]uch misconduct must be discouraged
in the strongest possible way." *Andrews v. Palmas De Majorca Condominium,* 898 So.2d
1066,1070 (Fla. 5th DCA 2005).   And the Court remains mindful of counsel's other
machinations which led the Court to previously complain of a foul odor wafting from this
case, and to warn of its lack of tolerance for frivolity or bad faith conduct: counsel's
dismissing Plaintiff's bankruptcy case **(Main Case D.E. #57)**, ten minutes later filing a
Chapter 13 bankruptcy on behalf of Mrs. Ocon (who Plaintiff, through these same counsel,

is suing in this adversary),[7] dismissing Mrs. Ocon's bankruptcy just prior to the February 13, 2007 Hearing, and moving to strike this Court's February 1, 2007 *Order Granting in Part Equinamics Corp.'s Objection to Debtor's Claimed Exemptions* **(D.E. #61)**.

The Court has many alternatives for punishing vexatious, frivolous, or dishonest conduct of the type on display by Simpson and Bonfiglio herein.  At a minimum, this Court should certainly require Plaintiff's counsel to reimburse Equinamics for all of the attorney's fees and costs incurred in proving to the Court that the payments representing a portion of the consideration for the sale of the real property at issue in this case had been made and in obtaining the relief provided in this Order.

Accordingly, it is

**ORDERED** as follows:

1. *Equinamics, Corp.'s Motion for Sanctions For Fraud on the Court* is GRANTED.

2. Defendant, Equinamics, shall be awarded against Enrique Antonio Ocon, James A. Bonfiglio and Sherri Simpson, jointly and severally,  its fees and costs incurred in proving to the Court that the payments representing a portion of the consideration for the sale of the real property at issue in this case had been made and in obtaining the relief provided in this Order.

---

[7]  Simpson represented at the January 30th hearing that Plaintiff was forced to sue his wife to quiet title because she owned the property with him as tenants by the entireties but did not want to file bankruptcy; within two days, on February 1, 2007, Plaintiff's desire to be in bankruptcy court had been extinguished and Mrs. Ocon's reluctance to file had somehow been overcome.

CASE NO. 06-14878-BKC-AJC
ADV. NO. 06-2140-BKC-AJC

     a.     Equinamics shall submit an affidavit with in ten (10) days from the date of this Order, of all such fees and costs incurred.

     b.     Enrique Antonio Ocon, James A. Bonfiglio, and Sherri Simpson shall have three (3) days thereafter to file an objection to the affidavit.  If an objection is filed, a further hearing will be set by this Court.  If no objection is filed, the fees and costs set forth in Equinamics' affidavit will be awarded as sanctions.

     3.     Sherri Simpson's request in the Response for sanctions against Equinamics is DENIED.

**###**

Submitted by:
Joel L. Tabas, Esquire
Tabas, Freedman, Soloff & Miller, P.A.
25 S.E. Second Avenue, Suite 919
Miami, FL 33131
Telephone: (305) 375-8171
Facsimile: (305) 381-7708

Copy furnished to:
Joel L. Tabas, Esquire
Attorney Joel L. Tabas shall serve copies of this Order on all interested parties and file a certificate of service.



RECEIVED
MAR 0 6 1995

THE FLORIDA BAR
FT. LAUDERDALE OFFICE

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

     Complainant,

v.

JAMES A. BONFIGLIO,

     Respondent.

_____/

Supreme Court Case
No. 84,201

The Florida Bar File
No. 94-50,427(15C)

## REPORT OF REFEREE

**I.**    **SUMMARY OF PROCEEDINGS:**

    The Florida Bar's formal complaint in this cause was filed on August 17, 1994. Thereafter, on August 29, 1994, the undersigned was appointed to preside as referee in this proceeding by order of the Chief Judge of the Seventeenth Judicial Circuit. The parties have presented to me a conditional guilty plea and conditional consent to discipline, which has been approved by the designated reviewer. After due deliberation, I have determined to recommend that respondent's guilty plea and consent to discipline be approved for reasons set forth herein. The pleadings, and all other papers filed in this cause, which are forwarded to the Supreme Court of Florida with this report, constitute the entire record.

    During the course of these proceedings, respondent was represented by Louis M. Silber, Esq., and The Florida Bar is represented currently by Richard B. Liss, Esq.

**II.**    **FINDINGS OF FACT AS TO EACH ITEM OF MISCONDUCT WITH WHICH RESPONDENT IS CHARGED:**

    Based upon the answer previously filed in this cause and the conditional guilty plea, my findings of fact are as follows:

PUBLIC RECORD

EXHIBIT
"A"

A. Respondent is, and at all times hereinafter mentioned was, a member of The Florida Bar subject to the jurisdiction and disciplinary rules of the Supreme of Court of Florida.

B. Respondent and his wife were involved in a dissolution of marriage proceeding brought in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida.

C. The final judgment in the dissolution of marriage proceeding was entered on November 7, 1988.

D. Thereafter, on May 18, 1989, an order on attorney fees was entered whereby respondent was ordered to pay the sum of $5,500 for attorney fees, together with costs in the amount of $885, directly to the law firm which had represented the former wife in the dissolution of marriage proceeding.

E. On or about October 1989, respondent filed a motion seeking leave of court to pay the aforestated obligation at the rate of $250 per month on the basis that he could not afford to make a lump sum payment.

F. Without objection, the court entered an order granting the relief sought.

G. The aforesaid order was entered on November 2, 1989, and did not contain any provision for the payment of interest.

H. On or about October 31, 1990, respondent caused a meritless lawsuit to be filed wherein multiple violations of the Federal Truth in Lending Act (TILA) were alleged. Named as a defendant in this action was the law firm which represented respondent's former wife in their dissolution of marriage proceeding. Also named as a defendant was the individual lawyer from this firm who represented the former wife.

2

AJC    Doc 52    Filed 03/09/07    Page 13 of 22

I.    During the pendency of the TILA lawsuit, respondent propounded what could be considered unduly burdensome discovery requests by means of a Request for Production. [Respondent requested production of client lists, client fee agreements and financial records evidencing payment of fees by clients for the last five (5) years when the statute of limitations for a TILA claim is one (1) year.]

J.    On February 28, 1992, summary judgment was granted against respondent predicated upon a determination that the TILA lawsuit was utterly without merit.

K.    Respondent prosecuted a frivolous appeal of the lower court's ruling to the Eleventh Circuit Court of Appeals.

L.    On March 31, 1993, the Eleventh Circuit Court of Appeals affirmed the lower court; found respondent's TILA lawsuit utterly devoid of merit; determined that the assertions made therein were manufactured by respondent through artifice and deceit; and determined that respondent's appeal of the lower court's summary judgment was utterly frivolous.

M.    In its order, the Eleventh Circuit Court of Appeals directed that respondent pay double the costs of the appeal and also ordered him to pay reasonable attorneys' fees to the appellees. The case was remanded to the district court with instructions for it to calculate and assess attorneys' fees and costs in connection with the appeal and, if deemed appropriate, enter sanctions under Rule 11 of the Federal Rules of Civil Procedure.

N.    On August 19, 1993, the district court entered an Order on Attorneys' Fees and Rule 11 Sanctions whereby attorneys' fees of $16,175 in the aggregate were awarded; respondent was ordered to successfully complete the Multistate Professional Responsibility Exam (MPRE) within

3

one (1) year from the date of the Order; and respondent was ordered to take and complete fifty (50) hours of seminars and/or lectures devoted to the subjects of legal ethics and/or professional responsibility within two (2) years of the date of the Order.

## III.    RECOMMENDATION AS TO WHETHER RESPONDENT SHOULD BE FOUND GUILTY:

Based upon the conditional guilty plea, my recommendation as to guilt is as follows:

A.    By reason of his filing the subject lawsuit, discovery requests and appeal, which had no substantial purpose other than to embarrass or burden the defendants, respondent violated R. Regulating Fla. Bar 4-4.4 [In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person.].

B.    By reason of his filing a meritless lawsuit and then prosecuting a frivolous appeal of the lower court's order granting summary judgment to the defendants, respondent violated R. Regulating Fla. 4-3.1 [A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.].

C.    By reason of the discovery requests contained in his Request for Production which was propounded during the pendency of the TILA lawsuit, respondent violated R. Regulating Fla. Bar 4-8.4(d) [A lawyer shall not engage in conduct that is prejudicial to the administration of justice.].

D.    By reason of his manipulation of the justice system by requesting and obtaining leave of court to pay attorney fees and costs through installment payments and then subsequently filing the subject lawsuit alleging TILA violations by the law firm and individual lawyer acceding to

4

such request, respondent violated R. Regulating Fla. Bar 4-8.4(d) [A lawyer shall not engage in conduct that is prejudicial to the administration of justice.].

        E.     By reason of his manufacturing the subject lawsuit through artifice, respondent violated that part of R. Regulating Fla. Bar 4-8.4(c) which provides that a lawyer shall not engage in conduct involving misrepresentation.

## IV.    RECOMMENDATION AS TO DISCIPLINARY MEASURES TO BE APPLIED:

In accordance with respondent's conditional consent to discipline, I recommend that respondent receive a public reprimand to be administered by me. I also recommend that respondent be placed on probation for a period of six (6) months with a special condition of such probation that respondent be required to comply with all terms of the Order on Attorneys' Fees and Rule 11 Sanctions entered by William J. Zloch, United States District Court Judge, on August 19, 1993. Respondent should be required to report to The Florida Bar, at the conclusion of his probationary period, whether he has fully complied with Judge Zloch's order. Respondent also should be required to submit any documentation required by The Florida Bar. In the event that respondent is unable to comply with all requirements of Judge Zloch's order within his probationary period, I further recommend that respondent's probation be extended indefinitely until he effects such compliance.

In arriving at the foregoing disciplinary recommendation, consideration was given to various factors which are set forth below:

        A.     Respondent has not heretofore been disciplined for professional misconduct of a nature set forth in this report. Respondent has been a member of The Florida Bar since 1979 and his past record of discipline consists only of a private reprimand in 1988 for failure to honor an

agreement to distribute a portion of recovered proceeds to a third party in satisfaction of the third party's claim.

B.      Respondent has expressed remorse and acknowledged that his conduct will have a negative impact on the legal profession at large.

C.      Respondent's course of conduct was the product of impaired judgment. He had been involved in a bitter dissolution of marriage proceeding. Rather than put the matter behind him, respondent chose to vent his emotions by commencing the TILA litigation against the former wife's attorney, Charles A. Nugent, Jr., and that attorney's law firm. Given his impaired judgment, for purposes of this proceeding, respondent was found to have acted negligently rather than in knowing violation of any ethics rules.

D.      The Florida Bar initiated this matter on its own initiative; there was no complaint filed by Mr. Nugent. Nonetheless, some deference should be given in this proceeding to Mr. Nugent's status as the victim who suffered the most direct harm as a result of respondent's transgressions. Therefore, although not binding and neither a mitigating or aggravating circumstance, Mr. Nugent's firm conviction that a public reprimand would be sufficient discipline was taken into account.

E.      There is simple precedent for a public reprimand under the circumstances presented. See The Florida Bar v. Thomas, 582 So. 2d 1177 (Fla. 1991); The Florida Bar v. Clark, 528 So. 2d 369 (Fla. 1988); and The Florida Bar v. Anderson, 515 So. 2d 224 (Fla. 1987).

F.      Applying the Florida Standards for Imposing Lawyer Sanctions, Standards 6.23 and 7.3 were found to come closest to describing respondent's misconduct. Both of these standards call for a public reprimand.

6

## V.    PERSONAL HISTORY AND PAST DISCIPLINARY RECORD:

After finding respondent guilty but prior to making my disciplinary recommendation, I

considered the following personal history and prior disciplinary record of respondent, to wit:

Age:   41

Date admitted to The Florida Bar:    December 13, 1979

Prior disciplinary convictions and disciplinary measures imposed therein:
Respondent was found guilty of minor misconduct and received a private reprimand
which was administered on May 20, 1988.

## VI.    STATEMENT OF COSTS AND MANNER IN WHICH COSTS SHOULD BE TAXED:

The Florida Bar has incurred $954 in costs which should be taxed against respondent in

accordance with his plea.  In taxing such costs, it is recommended that interest at the statutory rate

accrue and be payable beginning thirty (30) days after the disciplinary order in this cause becomes

final, unless a waiver is granted by the Board of Governors of The Florida Bar.

Dated this _____ 2ⁿᵈ _____ day of _____ March _____, 1995.


_JOHN T. LUZZO_

_____
JOHN T. LUZZO, REFEREE

A TRUE COPY

Copies furnished to:

    Richard B. Liss, Bar Counsel
    Louis M. Silber, Attorney for Respondent

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

      Complainant,

v.

JAMES A. BONFIGLIO,

      Respondent.

_____/

Supreme Court Case
No. 84,201

The Florida Bar File
No. 94-50,427(15C)

### PUBLIC REPRIMAND

    Mr. Bonfiglio, you are here today because of your professional misconduct. The nature of that misconduct involved filing a meritless lawsuit, propounding what could be considered unduly burdensome discovery requests during the pendency of the subject lawsuit, and prosecuting a frivolous appeal of the trial court's order granting summary judgment to the defendants.

    The privilege of practicing law carries with it heavy responsibilities. Those responsibilities include not pursuing a personal agenda through frivolous litigation. By engaging in such a pursuit, you added to the public perception that lawyers will subvert the legal system for their own benefit and, therefore, neither lawyers nor the system are worthy of trust and confidence. It is beyond peradventure that public trust and confidence is one of the linchpins of our system of jurisprudence. By your conduct, you have undermined that system and diminished both yourself and your chosen profession.

PUBLIC RECORD

This public reprimand is now a part of your permanent Bar record.  It is expected that you will not add to this record, but instead scrupulously adhere to both the letter and spirit of all rules of  professional conduct.  Should you falter and again engage in a violation of professional ethics, be on notice that such misconduct may result in the imposition of discipline which will affect your privilege of practicing law.

DONE AND ADMINISTERED this _14ᵀᴴ_ day of _June_, 1995.

_____
John T. Luzzo, Referee

2

# Supreme Court of Florida

THURSDAY, MARCH 16, 1995

THE FLORIDA BAR,

    Complainant,

v.

JAMES A. BONFIGLIO,

    Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

CASE NO. 84,201

TFB No.  94-50,427(15C)

**RECEIVED**
MAR 2 0 1995
THE FLORIDA BAR
FT. LAUDERDALE OFFICE

    We approve the uncontested referee's report and direct that respondent be given a public reprimand to be administered by the referee. Respondent is further placed on probation for six (6) months under the conditions set forth in the referee's report.

    Judgment for costs in the amount of $954.00 is entered against respondent for which sum let execution issue.

    <u>Not final until time expires to file motion for rehearing and, if filed, determined.</u>

A True Copy

   TEST:



Sid J. White
Clerk, Supreme Court

KBB
cc: Hon. John T. Luzzo, Referee
    Mr. Jerry M. Blaney
    Mr. John A. Boggs
    Mr. Richard B. Liss
    Mr. Louis M. Silber
    Mr. James A. Bonfiglio

PUBLIC RECORD

## IN THE SUPREME COURT OF FLORIDA
### (Before a Grievance Committee)

THE FLORIDA BAR,

        Complainant,

v.

SHERRI B. SIMPSON,

        Respondent.

_____/

Case No.

TFB Case No.
2001-50,395(17H)
2001-50,529(17H)

### ADMONISHMENT OF MINOR MISCONDUCT

    Ms. Simpson, Seventeenth Judicial Circuit Grievance Committee "H" has recommended that you be admonished for your conduct in this matter. The designated reviewer on The Florida Bar's Board of Governors concurred with the grievance committee's recommendation.

    The sanction being administered today arises from your lack of properly explaining matters to your client in order for them to make informed decisions regarding their representation. Your clients were not fully and properly counseled on legal options available to them, in particular with regard to creditor relief. You filed standard Answers for clients, without consulting fully and determining if they had a valid basis for asserting denials. Additionally, by limiting your services to the filing of an Answer, you limited the scope of your representation without the consent of your clients after consultation.

**PUBLIC RECORD**

EXHIBIT
"B"

Further, you failed to properly supervise your staff. This action left your

clients vulnerable to ethical misrepresentations. As an attorney, your obligation is

to diligently supervise your staff in order to provide the best possible

representation for your client.

Having experienced this admonishment, this committee trusts that you will,

from this point forward, endeavor to conform your conduct to the mandates of the

Rules Regulating the Florida Bar. The Bar demands as much from you, your

clients are entitled to no less, and you could suffer grave professional

consequences should you fail.

This admonishment is now a part of your permanent bar record. Be advised

that while this admonishment does not effect your privilege to practice law, future

misconduct may. Accordingly, this committee, together with all of the lawyers of

Florida, expect your future conduct always to be in compliance with our oath of

admission to the bar.

DONE AND ADMINISTERED this /ス$^{TH}$ day of August, 2002.

SEVENTEENTH JUDICIAL CIRCUIT
GRIEVANCE COMMITTEE "H"


SCOTT MICHAEL DRESSLER, ESQ.,
Chair, Seventeenth Judicial Circuit
Grievance Committee "H"